UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYL JOHNSON,

                Petitioner,                Case Number 2:10-CV-13140
                                                      Honorable Victoria A. Roberts

v.

DEBRA SCUTT,

                Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS

This matter is before the Court on Petitioner Darryl Johnson's petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Washtenaw Circuit Court of first-degree home invasion. MICH. COMP. LAWS § 750.110(a)(2). He was sentenced to 12-to-20 years, to be served consecutively to a sentence he was on parole for when he committed the offense.

The petition raises eight claims: (1) counsel failed to object to the introduction of a 9-1-1 call on Confrontation Clause grounds; (2) the trial court erroneously allowed the late endorsement of the 9-1-1 operator as a witness; (3) the trial judge was biased against Petitioner; (4) trial counsel secretly aided the prosecutor; (5) the prosecutor engaged in misconduct; (6) there was insufficient evidence to support the conviction; (7) the cumulative effect of errors rendered Petitioner's trial unfair; and (8) appellate counsel was ineffective.

The Court finds that Petitioner's claims are without merit or barred by procedural default. The petition is **DENIED**. The Court also **DENIES** Petitioner a certificate of appealability and **DENIES** permission to proceed on appeal in forma pauperis.

## I. Facts and Procedural History

Petitioner's conviction arose from a break-in in a student housing area in Ann Arbor, Michigan.

On the evening of August 16, 2004, a 9-1-1 operator received an emergency call from a woman identifying herself as Melissa Lutz. Lutz called from her State Street house on the campus of the University of Michigan. On the 9-1-1 tape, Lutz states there was a man in her home who was not supposed to be there. The operator dispatched police. The tape was played for the jury.

Five Ann Arbor police officers quickly responded. Officer Spickard approached the rear of the house and through a window saw Petitioner walking around in the kitchen. Petitioner was an older man who did not fit the usual profile for campus housing. Petitioner exited through a rear door and stepped out onto the porch. Two officers drew weapons; Petitioner put his hands on top of his head. Officers placed Petitioner in handcuffs.

Petitioner said,"I knew I was pushing it," and "I can't believe I let you punk-ass bitches catch me." The officers then saw a woman, presumably Lutz, exit the house and begin yelling at Petitioner. Petitioner responded to her, "Yes, I'm a stranger. I was in your house. I was in your house drinking." The officers removed a butter knife, a digital camera, a wallet, and a watch from Petitioner's pockets. While Petitioner was transferred to the police station and later when he was booked he repeatedly said he couldn't believe he was caught.

Nitin Sharma, a student at the University of Michigan, testified that he shared the house with Lutz and two other students. He identified the watch, camera, and wallet found in Petitioner's possession as belonging to him. He testified that he did not know Petitioner and he had left the items on the computer desk in his bedroom.

The jury found Petitioner guilty of first-degree home invasion.

Petitioner appealed his conviction to the Michigan Court of Appeals. His appellate brief raised the following claims:

> I. Counsel was ineffective for failing to object to the admission of testimony, on Confrontation Clause grounds, regarding out-of-court statements allegedly made by missing witness Melissa Lutz and the admission of opinion testimony of Officer McNally based on statements allegedly made by Ms. Lutz.
>
> II. The trial court abused its discretion by overruling Defendant's objection to the late endorsement of prosecution witness April Parrish [the 911 operator].

Petitioner also filed a supplemental pro se brief, rasing one additional claim:

> I. Defendant was denied effective assistance of counsel at pretrial proceedings when counsel failed to file any pretrial motions.

The Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *People v. Johnson,* 2007 Mich. App. LEXIS 729 (Mich. Ct. App. March 15, 2007). Petitioner then filed an application for leave to appeal, which raised the same claims. The Michigan Supreme Court denied the application in a standard order. *People v. Johnson*, 480 Mich. 920 (2007) (table).

Petitioner returned to the trial court and filed a motion for relief from judgment. The motion raised the following claims:

> I. The trial judge was biased.
>
> II. Trial counsel was ineffective.
>
> III. The prosecutor committed misconduct.
>
> IV. The evidence was insufficient to sustain the verdict.
>
> V. There was cumulative error.
>
> VI. Appellate counsel was ineffective.

The trial court denied the motion in an opinion and order dated April 3, 2009. The trial court

first recited the requirements of Michigan Court Rule 6.508(D)(3) that Petitioner establish "good cause" and "actual prejudice" for failing to raise his new claim during his direct review. Opinion, at 5-6. It then addressed Petitioner's ineffective assistance of appellate counsel issue first "because it is a threshold issue." Id., at 7. The court found that appellate counsel was not ineffective for failing to raise Petitioner's new substantive issues because they were without merit and because the issues that were raised on direct appeal were strong enough to provide effective assistance on appeal. Id., at 8-9. The court went on to reject the substantive claims on the merits. Id., at 9-17.

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals. The application was denied "for failure to establish entitlement to relief under MICH. CT. RULE 6.508(D)." *People v. Johnson*, No. 295185 ( Mich. Ct. App. February 16, 2010). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court but was also denied relief under Rule 6.508(D). *People v. Johnson*, No. 140904 (Mich. Sup. Ct. July 26, 2010).

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is

because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### III. Analysis

#### A. The 9-1-1 Recording

Petitioner first argues that his trial counsel was ineffective for failing to raise an objection under the Confrontation Clause to the admission of the recording of Lutz' 9-1-1 call because she was not available at trial for cross-examination. Respondent asserts that the claim was reasonably decided by the Michigan Court of Appeals during Petitioner's direct appeal.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was

"outside the wide range of professionally competent assistance." *Id*. at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. A court's review of counsel's performance must be "highly deferential." *Id*. at 689.

Petitioner argues that his counsel performed deficiently by failing to object to the admission of the 9-1-1 call recording on Confrontation Clause grounds. The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right. . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is ... a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." *Id*. at 404-05 (internal quotation omitted).

In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." As *Crawford* and its progeny make clear, it is only out-of-court statements with a "testimonial character" with which the Confrontation Clause is concerned. *See Davis v. Washington*, 547 U.S. 813, 821 (2006).

Although the Supreme Court did not define "testimonial" in *Crawford*, it has provided

-7-

guidance in subsequent cases. Generally, "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id*. at 821. Thus, in *Davis*, 547 U.S. 813, the Supreme Court held that statements made in Davis to a 9-1-1 operator while the complainant was still in danger were nontestimonial but that statements made in the sister case to a police officer and written in an affidavit after the danger had dissipated were testimonial. Because the informal statements in *Davis* explained "events as they were actually happening" and "were necessary to be able to resolve the present emergency," they were nontestimonial. *Id*. at 827. By contrast, because the more formal statements in the sister case were "neither a cry for help nor the provision of information enabling officers immediately to end a threatening situation," *Id*. at 832, but rather "part of an investigation into possible criminal past conduct," *Id*. at 829, they were testimonial.

The Supreme Court recently had occasion to apply *Davis* in *Michigan v. Bryant*, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011). In *Bryant*, the statements at issue were made to the police by the mortally-wounded victim of a shooting as he lay dying in a gas station parking lot. *Bryant*, 131 S. Ct. at 1151. The victim explained to police that as he was leaving defendant Bryant's house, Bryant shot him through the door. *Id*. The victim told the police that after being shot he drove to the gas station where police found him. *Id*. The Court held the statements to be nontestimonial. The Court likened the situation to the "informal, harried 9-1-1 call in *Davis*." *Id*. at 1166. It also found significant, among other things, that the "[t]he police did not know, and [the victim] did not tell them, whether the threat was limited to him" and reasoned that thus "the potential scope of the . . . emergency in this case stretches more broadly than those at issue in *Davis*." *Id*. at 1164.

-8-

*Davis* and *Bryant* establish that the 9-1-1 call introduced in this case was nontestimonial. Under those cases, "the relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Bryant*, 131 S. Ct. at 1156. Lutz's call took place in the middle of the criminal episode. Petitioner had entered her home and was still inside when the call for help was made. Put simply, the 9-1-1 call was just the sort of harried, informal encounter designed "to enable police assistance to meet an ongoing emergency," which, "while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis*, 547 U.S. at 821. That is, the Michigan Court of Appeals' decision that Petitioner's counsel was not ineffective for failing to object to admission of the 9-1-1 call was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

This claim is without merit and is denied.

## B. Opinion Testimony of Officer McNally

Petitioner also argues in his first claim that his counsel was ineffective for failing to object to Officer McNally's testimony that he believed Petitioner entered the house illegally. Petitioner asserts that this testimony was objectionable because it was not based on McNally's own perceptions but on what Lutz had told him. The Michigan Court of Appeals agreed that the testimony was inadmissible, but it found that Petitioner had not demonstrated that he was prejudiced. That determination was reasonable.

As explained, for Petitioner to demonstrate that his counsel was ineffective, he must show that but for counsel's errors there is a reasonable probability that the result of the proceeding would

have been different. *Strickland*, 466 U.S. at 694. McNally testified that he concluded that the house was actually entered illegally, that the person found in the house was not supposed to be there, and that items were taken from the house. These points were already overwhelmingly established through the proper admission of the 9-1-1 call, Petitioner's repeated admissions to the police, the officers' testimony as to what they observed when they arrived at the scene, and the testimony of Lutz's roommate. There is not reasonable probability that the result of the trial would have been any different had counsel successfully objected to this portion of McNally's testimony; the claim is therefore without merit.

### C. Failure to Endorse 9-1-1 Operator as Witness

Petitioner contends that he was denied a fair trial by the prosecutor's failure to endorse April Parrish, the 9-1-1 operator, as a witness before calling her at trial. This claim is without merit.

The state's failure to endorse a witness prior to calling that witness to testify does not violate any federal constitutional right and is not grounds for federal habeas relief. *Hence v. Smith*, 37 F. Supp. 2d 970, 982 (E. D. Mich.1999); *Mitchell v. Wyrick*, 698 F.2d 940, 943 (8th Cir.1983). This is because there is no general constitutional right to discovery in a criminal case, *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977), and thus the presentation of a "surprise" witness does not violate a defendant's due process rights. *See Id.,* at 560-61. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### D. Claims Presented to State Court on Post-Conviction Review

The remainder of Petitioner's claims were presented to the state courts in his motion for relief from judgment filed in the trial court and in the appeal that followed its denial. Petitioner claims that the trial judge was biased, his attorney secretly aided the prosecutor, the prosecutor

engaged in misconduct, there was insufficient evidence presented at trial, there was an accumulation of errors, and his appellate counsel was ineffective. Respondent asserts that these claims are procedurally defaulted because Petitioner did not raise them in his direct appeal.

When a state court rules that a prisoner has defaulted his federal claims based on "an independent and adequate state procedural rule," a federal court is likewise barred from reviewing those claims pursuant to a habeas petition, unless "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The narrow exception to this rule that allows review when "the habeas petitioner can demonstrate a sufficient probability that [the] failure to review his federal claim will result in a fundamental miscarriage of justice," *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). The fundamental miscarriage of justice exception applies only where "a constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

"[A] procedural default does not bar consideration of a federal claim on . . . habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). Where there has been one reasoned state court judgment enforcing a state procedural bar, it is presumed that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Respondent says that these claims are barred under Michigan Court Rule 6.508(D)(3). That rule provides that a state court may not grant post-conviction relief to a defendant if the motion for

-11-

relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." MICH. CT. R. 6.508(D)(3)(b)(i).

The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal in form orders that reference Rule 6.508(D) in a manner that is ambiguous as to whether they invoke subsection (D)(3)'s procedural bar or deny relief on the merits. *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). Therefore, the court looks to the trial court's order as "the last reasoned state court opinion" in order to "determine the basis for the state court's rejection" of Petitioner's ineffective-assistance-of-counsel claim. *Id*.

In denying Petitioner's motion for relief from judgment, the trial court cited the "good cause" and "actual prejudice" standard of Rule 6.508(D)(3), as the standard Petitioner needed to meet for failing to raise these new claims during his direct review, and then concluded that Petitioner was not entitled to relief because he could not show that his appellate counsel was ineffective for failing to raise his other claims during his direct appeal because the claims all lacked merit.

While it is true that the trial court also discussed the merits of Petitioner's claims, it did so either in the alternative or in the context of deciding whether appellate counsel was ineffective for failing to have raised them. The manner in which the state trial court conducted its analysis -- though it resembled a merits review -- still constituted the imposition of a procedural default. *Davie v. Mitchell*, 547 F.3d 297, 313 (6th Cir. 2008) ("Although the determination of whether appellate counsel was ineffective for failing to raise a substantive claim may, in some cases, involve an

inquiry into the merits of the underlying substantive claim, the fact remains that the two claims are 'analytically distinct' for purposes of the exhaustion and procedural default analysis in habeas review."); *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004). The state court's decision was therefore based on Petitioner's failure to comply with a state procedural rule. *See Ivory v. Jackson*, 509 F. 3d 284, 292-93 (6th Cir. 2007); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005), and the claims raised in Petitioner's motion for relief from judgment are therefore procedurally defaulted.

In an attempt to establish cause to excuse his procedural default, Petitioner argues here, as he did to the trial court, that his appellate counsel rendered constitutionally deficient representation by failing to raise these claims on direct appeal. Attorney error rising to the level of ineffective assistance of counsel can establish cause that may allow this court to look past Petitioner's procedural default. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). To make such a showing, Petitioner must demonstrate that appellate counsel's failure to pursue his ineffective-assistance claim amounted to deficient performance that prejudiced the defense. *Strickland*, 466 U.S. at 687.

It is well established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). As the United States Supreme Court has explained: "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy." *Id*. at 754; *see also id*. at 753 ("A brief that raises every colorable issue runs the risk of burying good arguments—those that, in the words of the great advocate John W. Davis, 'go for the jugular'—in a verbal mound made up of strong and weak contentions." (citation omitted)). In fact, "the hallmark

-13-

of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990) (citing *Jones*, 463 U.S. at 751).

"[I]t is . . . possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003) (quoting *United States v. Cook*, 45 F.3d 388, 395 (10th Cir. 1995)).

Petitioner has not shown that appellate counsel's omission of these claims on direct appeal was "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Counsel filed a professionally competent appellate brief raising substantial claims. Indeed, the claims raised by counsel still form Petitioner's lead claims. Appellate counsel could have reasonably decided that these claims, rather than Petitioner's post-conviction claims, were the strongest arguments available to Petitioner on appeal. For the reasons stated by the trial court in its discussion on the merits of Petitioner's new claims, they were not a "dead-bang winners."

Petitioner fails to establish cause for his procedural default of failing to raise these claims

on direct review, and it is unnecessary for the court to reach the prejudice issue. *See Smith v. Murray*, 477 U.S. at 533. This court is barred from reviewing Petitioner's procedurally defaulted claims.

### IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37.

The Court concludes that a certificate of appealability is not warranted because reasonable jurists could not debate the Court's assessment of Petitioner's claims. The Court also denies Petitioner permission to proceed on appeal in forma pauperis; an appeal could not be taken in good faith.

### V. Conclusion

For the foregoing reasons:

(1) the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED**

**WITH PREJUDICE**;

(2) a certificate of appealability is **DENIED**; and

(3) permission to proceed on appeal in forma pauperis is **DENIED**.

**IT IS ORDERED.**

S/Victoria A. Roberts<br>
Victoria A. Roberts<br>
United States District Judge

Dated: November 28, 2012

---

The undersigned certifies that a copy of this document was served on the attorneys of record and Darryl Johnson by electronic means or U.S. Mail on November 28, 2012.

S/Carol A. Pinegar
Deputy Clerk

---